FILED

UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

AUG 2 5 2004

MATTHEW JAMES GRIFFIN,

   Petitioner,              **CLERK**

v.              **Civ. No 97-1560 MV/RHS**
              (cons. w/ 00-979)

TIM LEMASTER, Warden,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

  1.  This a proceeding on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254.

Petitioner seeks to vacate the judgment and sentence entered in CR 89-00576 in the Second Judicial

District, Bernalillo County, of New Mexico. In that proceeding, Petitioner was convicted following

a jury trial of one count of First Degree Murder (Felony Murder), one count of Aggravated Burglary

(Firearm Enhancement), five counts of Armed Robbery (Firearm Enhancement), and one count of

Tampering With Evidence. Pursuant to those convictions, Petitioner was sentenced to a term of life

imprisonment plus fifty years, to be followed by five years parole.

  2.  Petitioner challenges his convictions and sentence on nine grounds. Petitioner alleges that

he was denied effective assistance of trial counsel  because his trial counsel labored under a conflict

of interest (Claim I),  he failed to pursue a challenge to an improper search warrant (Claim III), and

he failed to adequately investigate the case or call various witnesses at trial (Claim V).  Griffin asserts

that he was denied effective assistance of appellate counsel because appellate counsel raised, but

failed to argue, ineffective assistance of trial counsel on direct appeal (Claim VI). Petitioner alleges



that he was denied due process because his conviction was obtained by the use of a variety of false

or misleading evidence and testimony which was knowingly introduced by the prosecution (Claim II),

the prosecution failed to disclose exculpatory evidence (Claim IV), and improper jury instructions

failed to require the prosecution to prove the element of intent for some of his crimes (Claim VII).

Petitioner claims that his conviction for felony murder and for aggravated burglary constitutes double

jeopardy (Claim VIII). His final claim is that insufficient evidence was presented at trial to support

his convictions and that the New Mexico Supreme Court affirmed those convictions based upon an

inaccurate recital of the evidence presented at trial (Claim IX).

3. As a preliminary matter, 28 U.S.C. §2254(b)(1) and (c) require that a state prisoner

seeking relief must exhaust state remedies before seeking to obtain relief in a federal *habeas*

proceeding. See generally, Rose v. Lundy, 455 U.S. 509 (1982). Respondent contends that

Petitioner failed to exhaust his state court remedies as to the sufficiency of the evidence claim and that

he is procedurally barred from asserting that claim in the New Mexico courts.

**PROCEDURAL BACKGROUND**

4. On February 14, 1989 Petitioner's Judgment and Sentence was entered. (Answer, Ex. A).

Petitioner's conviction became final upon the denial of *certiorari* review of his direct appeal on

November 18, 1993. (Answer, Ex. H). Petitioner filed a petition for writ of *habeas corpus* with the

New Mexico District Court on April 7, 1997. (Answer, Ex. I). That petition was denied on

November 20, 1997. (Answer, Ex. L) . Petitioner sought *certiorari* review of that denial with the

New Mexico Supreme Court, which was denied on December 15, 1997. (Answer, Ex. N). Petitioner

filed a timely federal *habeas* petition on December 8, 1997, prior to the denial of his *certiorari*

petition by the New Mexico Supreme Court. (Answer, Ex. O). Petitioner was appointed counsel in

2

that action and, after he proved unable to work with either the Federal Public Defender's office or a private attorney, was directed to proceed *pro se*. (Answer, Ex. R, V, W). Petitioner failed to file his brief in chief and, after over seven months, the petition was dismissed without prejudice for failure to prosecute. (Answer, Ex. X).

5. Two days later, on June 30, 2000, Petitioner filed a second federal habeas petition. On July 11, 2000, Petitioner filed a motion in the first action seeking to vacate the order of dismissal and consolidate the two habeas actions. The District Court denied that motion on September 8, 2000.[Doc. No. 41]. Petitioner filed a timely appeal of that decision. [Doc. No. 46].

6. Meanwhile, the Court went forward on Griffin's second habeas petition. On August 14, 2000, Respondent filed a motion to dismiss the petition, arguing that Petitioner had not filed the petition either within the one year statute of limitations imposed under the Antiterrorism and Effective Death Penalty Act of 1996 or within the one-year grace period afforded for filing *habeas* petitions by United States v. Simmonds, 111 F.3d 737 (10th Cir. 1997) and Hoggro v. Boone, 150 F.3d 1223 (10th Cir. 1998). The Court granted the motion and dismissed the second petition as untimely. [Doc. No. 28]. Petitioner filed a timely appeal of that decision. [Doc. No. 30].

7. The United States Court of Appeals for the Tenth Circuit considered the two appeals together and on February 20, 2002, an Order and Judgment was entered reversing the decisions of this Court dismissing Griffin's two federal habeas corpus petitions. On remand, the district court was directed to consolidate the two habeas proceedings in the interests of judicial economy, to set a briefing schedule on the merits, and to consider whether to appoint new counsel to represent Petitioner and whether a transcript of post-conviction proceedings is necessary to Petitioner's claim. [Doc. Nos. 33 and 50]

8. The Court consolidated the two cases, set a briefing schedule, appointed Petitioner another attorney and ordered a transcript of post-conviction proceedings. A Memorandum Brief was filed on Griffin's behalf on July 25, 2003. In August of 2003, this Court granted Petitioner's attorney's motion to withdraw and appointed new counsel. New counsel then moved to withdraw and that motion was granted. In the meantime, Respondent's counsel requested two extensions of time and filed her brief on December 8, 2003.

9. On December 8, 2003, new counsel was appointed for Petitioner pursuant to the CJA Act. Counsel requested and received two extensions of time to file a Reply Brief, which was timely filed on June 14, 2004 along with Petitioner Griffin's Renewed Motion for Funds for Expert Witnesses.[Doc. No. 99]. On July 1, 2004, the Warden filed his Motion to File a Supplemented Respondent's Memorandum Brief, contending that Petitioner's 89 page Reply Brief raised new arguments that were not briefed in his original Memorandum Brief. [Doc. No. 101]. This Court denied that motion on August 11, 2004. [Doc. No. 105]

**Standard of Review**

10. The Antiterrorism and Effective Death Penalty Act of 1996 ( AEDPA) provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U. S. C . § 2254( d).

11. Petitioner asserts that the deferential AEDPA standard is inapplicable to Griffin's first

4

through sixth grounds for relief because the state court did not adjudicate the state habeas claims on the merits. The Order re: Petition for Writ of Habeas Corpus states that "[t]he Court having reviewed the Petition for Writ of Habeas Corpus, State v. Griffin, 116 NM 689 (1993), the State's response thereto and having heard oral argument on October 20, 1997 and being fully advised in the premises hereby Orders that the Petition be and hereby is denied. The Court adopts as its reasoning the Response to Petition for Writ of Habeas Corpus filed June 11, 1997 by the State." (Answer, Ex. K).

12.   According to Petitioner, the simple adoption of the prosecutor's response to the state habeas petition does not constitute "findings" of the court and the presumption of correctness does not apply. Mr. Griffin therefore urges the Court to apply the pre-AEDPA standard of review to these claims.

13.   The Tenth Circuit has recognized that a summary decision may qualify as a decision on the merits, provided that the decision was reached on substantive rather than procedural grounds. Aycox v. Lytle, 96 F.3d 1174, 1177 (10th Cir. 1999). In Aycox, the state district court denied habeas relief in a summary order that stated as a matter of law, Petitioner was not entitled to relief and the New Mexico Supreme Court denied the petition for a writ of certiorari without analysis. Id.  The Tenth Circuit held that because there was no evidence that the state court did not reach the merits, the summary decision qualified as an adjudication on the merits, stating that "[t]hus, we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.... Our review is in fact deferential because we cannot grant relief unless the state court's result is legally or factually unreasonable."

Aycox, 196 F. 3d at 1178.

14. The state district judge's order explains that he reviewed the petition and the response, and heard oral argument on the petition prior to reaching his decision. (Answer, Ex. K.) The New Mexico Supreme Court denied the application for certiorari without analysis. (Answer, Ex. M.) As in Aycox, the record indicates no procedural basis for the ruling and there is no indication that the state court ruled on anything but the merits. The Magistrate Judge therefore recommends that the deferential independent review adopted in Aycox be applied to this petition. As discussed below, however, even if the pre-AEDPA standard of review is applied to Petitioner's first six claims, this Court finds those claims to be without merit.

**Request for Evidentiary Hearing**

15. Mr. Griffin is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel if his allegations, if true and not contravened by the record, would entitle him to habeas relief. Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir.1998). Whether Mr. Griffin's allegations, if proven, would entitle him to habeas relief is a question governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(e)(2) of the Act provides that if a petitioner fails to develop the factual basis of a claim in state court proceedings, he is not entitled to an evidentiary hearing unless he shows: (1) the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence."

16. The restrictions of § 2254(e)(2) do not apply, however, unless the petitioner's failure to develop the factual predicate for his claim is a result of his own, or his counsel's lack of diligence.

Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479, 1487-88, 146 L.Ed.2d 435 (2000). See also Miller

v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998) (holding § 2254(e)(2) does not apply where the

petitioner "diligently sought to develop the factual basis underlying his habeas petition, but a state

court prevented him from doing so").   Mr. Griffin  requested  an evidentiary hearing in  the state

district court on his state habeas petition.   He  acted diligently to develop the factual basis of his

habeas claim, and is therefore not subject to the limitations of § 2254(e)(2).

      17.   Although the Court finds that  the AEDPA's limitation on evidentiary hearings, §

2254(e)(2), does not apply to Mr. Griffin's claim, the Court's review of the voluminous record in this

case does not establish that Petitoner's allegations are "true and not contravened by the record."

For reasons more fully discussed below, the court finds that an evidentiary hearing is not required.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

      18. As noted, Petitioner claims that both his trial counsel and his appellate counsel were

ineffective.  In order to obtain habeas relief for ineffective assistance of counsel, " a petitioner must

establish both that his attorney's representation was deficient and that he was prejudiced by that

deficiency." James v. Gibson,  211 F. 3d 543, 555 (10th Cir. 2000) (citing Strickland v. Washington,

466 U. S. 668, 687 (1984)). To show his counsel was constitutionally deficient, a petitioner must

demonstrate that his counsel's representation fell below an objective standard of

reasonableness. Strickland, 466 U. S. at 688. In order to demonstrate prejudice, a petitioner must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  Strickland, 466 U. S. at 694. A reasonable probability is

a probability sufficient to undermine confidence in the outcome. Id.

      19. Counsel is strongly presumed to have rendered adequate assistance and made all

7

significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U. S. at 690.
The inquiry is " 'highly deferential' to counsel, presuming reasonable judgment and declining to
second guess strategic choices." United States v. Williams, 106 F. 3d 1362, 1367 ( 7th Cir. 1997).
A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting
effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time." Strickland, 466 U. S. at 689. "An ineffective
assistance claim may be resolved on either performance or prejudice grounds alone." Fox v. Ward,
200 F. 3d 1286, 1295 (10th Cir. 2000); Hatch v. Oklahoma, 58 F. 3d 1447, 1457 (10th Cir. 1995).

20. With regard to appellate counsel, Petitioner may obtain relief if he can show that counsel
omitted a "dead-bang winner," of an issue on appeal. Banks v. Reynolds, 54 F.3d 1509, 1515 (10th
Cir. 1995). A "dead-bang winner" is an issue which is obvious from the trial record and one which
probably would have resulted in a reversal on appeal. Id. at 1515, FN 13.

**First claim for relief**

21. Petitioner alleges that his trial counsel suffered under a conflict of interest because
conversations between his attorney and a police informant were recorded by the informant. Mr.
Griffin hired Billy Blackburn to represent him before he was arrested or indicted. As part of their
investigation of Petitioner, the police contacted David McCutcheon, a gun dealer and acquaintance
of Petitioner. Mr. McCutcheon began taping conversations for the police after that time and secretly
recorded two conversations with Mr. Backburn. (R.P. at 24-25.)

22. The district attorney's office moved to disqualify Mr. Blackburn. (R.P. at 24).
Petitioner never objected to Mr. Blackburn's continued representation of him at trial. Gary Mitchell
entered the case and he and Mr. Blackburn continued to represent Petitioner as co-counsel. The issue

8

was briefed in state court by both parties, and *amicus curiae* briefs were filed by the National Association of Criminal Defense Lawyers, the New Mexico Trial Lawyers Association and the New Mexico Criminal Defense Lawyers Association. (R. P. at 124, Memorandum Brief Ex. A, B, C, D). The trial court subsequently ruled that the tapes of the conversations with Mr. Blackburn would not be admissible unless the informant's credibility were attacked. (R. P. at 933-935, XXXI at 104.).

23. Petitioner contends that he was thus prevented from testifying regarding the informant's credibility. Inherent in Petitioner's argument is the assertion that the tapes contained statements by his attorney which would have been prejudicial to his defense.

24. A petitioner who claims ineffective assistance of counsel based on conflict of interest, yet raised no objection to the trial court, must demonstrate an "actual conflict of interest adversely affected his lawyer's performance." United States v. Gallegos, 39 F.3d 276, 278 (10th Cir. 1995) (citing Cuyler v. Sullivan, 446 U.S. at 350)). The possibility of a conflict alone is not sufficient. Id. However, if the petitioner makes this showing, prejudice is presumed. Church v. Sullivan, 942 F.2d 1501, 1510 (10th Cir. 1991).

25. The state trial court adopted the state's arguments regarding this issue in resolving Petitioner's *habeas* petition. (Answer, Ex. L). The state argued that Petitioner had not shown an actual conflict of interest on counsel's part merely because counsel's statements on the tapes might have affected his trial strategy. In addition, the state noted that Petitioner was represented simultaneously at trial by a second attorney who suffered under no alleged conflict of interest.

26. Mr. Griffin now claims that he had intended to testify and could not do so because the recorded conversations of his counsel could be admitted into evidence and his testimony inculpating McCutcheon would have conflicted with the taped conversations. If Petitioner had testified that

McCutcheon was responsible for the crimes, the disparity between his testimony and that of McCutcheon would have existed, whether or not Mr. Blackburn continued to represent him.

27. The Court has reviewed the transcript of the recorded conversations between Mr. Blackburn and Mr. McCutcheon (Memorandum Brief Ex. E) and does not find that they demonstrate the creation of an actual conflict. Mr. Blackburn did not say anything during those conversations that indicated that he was pursuing his own interests to the detriment of his client. The tapes of the conversations were not brought up at trial. Even if Petitioner had obtained new counsel, any inconsistencies between Mr. Griffin's version of events and Mr. McCutcheon's discussion on the tapes would have presumably been introduced into evidence if Petitioner took the stand and attacked the informant's credibility, resulting in introduction of the tapes. Consequently, to the extent that the strategic decision for Petitioner not to take the stand was made because of the existence of the tapes, it would have been valid in any case and Petitioner was not prejudiced by this aspect of counsel's conduct.

28. Furthermore, Mr. Mitchell also participated in the decision that Petitioner should not take the stand. Mr. Mitchell stated that he would inform the state about whether or not Petitioner would testify "as soon as I make up my mind." XV, 118. Mr. Griffin does not allege, and there is no basis for assuming, that Mr. Mitchell conspired with Mr. Blackburn to compromise his interests and prevent him from testifying. The trial court recognized a possible conflict of interest, allowed extensive briefing of the issue and ruled in Petitioner's favor on that issue. Mr. Blackburn and Mr. Mitchell then put on a vigorous defense. The Court finds counsel's conduct falls within the range of reasonable professional assistance. The Court cannot conclude that Mr. Griffin suffered any actual prejudice from the conflict that he now posits. He has thus failed to meet either prong of the

Strickland test with respect to this claim.

**Third Claim for Relief**

29. Petitioner also argues that his trial counsel was ineffective because he failed to pursue a challenge to the warrant for the search of Petitioner's house and vehicle. Petitioner states that counsel filed two motions to suppress, both of which he withdrew, then failed to file a third motion to suppress. Petitioner asserts that no affidavit was attached in support of the search warrant and that a motion to suppress would have therefore been successful.

30. Fourth Amendment challenges to a search or seizure are generally precluded from federal habeas review under Stone v. Powell, 428 U.S. 465 (1976), however, the Court can consider whether defense counsel was ineffective for failing to assert a Fourth Amendment challenge. In order to establish under Strickland on this claim, Mr. Griffin has to show both that his Fourth Amendment claim challenging the search warrant was meritorious and that a reasonable probability exists that the verdict would have been different absent the excludable evidence. Hooper v. Mullin, 314 F.3d 1162, 1175-76 (10th Cir. 2002).

31. Mr. Griffin argues that his house was searched in reliance on a general warrant in violation of the Fourth Amendment to the United States Constitution. The Fourth Amendment states, [ t] he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

32. The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to...conduct a search. Steagald v. United States, 451 U.S. 204, 212 (1981). A

11

search warrant is issued upon a showing of probable cause to believe that the legitimate object of a

search is located in a particular place, and therefore safeguards an individual's interest in the privacy

of his home and possessions against the unjustified intrusion of the police. Id. at 213.

33. The Fourth Amendment requires that a search warrant describe the things to be seized

with sufficient particularity to prevent a general exploratory rummaging in a person's belongings.

United States v. Carey, 172 F. 3d 1268, 1272 (10th Cir. 1999) (citing Marron v. United States,

275 U. S. 192, 196 (1927)). The Supreme Court has noted that "by limiting the authorization to

search to the specific areas and things for which there is probable cause to search, the requirement

ensures that the search will be carefully tailored to its justifications, and will not take on the character

of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison,

480 U. S. 79, 84 (1987).

34. Mr. Griffin argues that the search warrant on its face does not describe with particularity

any of the items to be seized. The trial court sealed the affidavit and it was not provided to Petitioner

until a later time. Petitioner contends that the sealed affidavit cannot be used to cure the search

warrants deficient description of items to be seized because the affidavit was not attached to the

search warrant when it was executed.

35. The New Mexico Court of Appeals has held that "failure to provide the person searched,

at the time of the search with the statement supporting probable cause does not implicate a

constitutional right to be free from unreasonable searches." State v. Malloy, 131 N.M. 222, 225, 34

P.3d 611, 614 (Ct. App.), cert. denied 130 N.M. 722, 31 P.3d 380 (2001). The document's lack of

physical attachment to a search warrant at the time of the warrant's execution does not preclude the

court from considering the document when determining the overbreadth of a search warrant.

12

36. The state attached a copy of the warrant and affidavit in support to its response to the state *habeas* petition. ( Answer, Ex. K). Review of that documents reveals sufficient information to establish probable cause and a detailed list of items to be seized during the search. The failure to deliver the affidavit with the search warrant at the time of the search does not violate the constitution.

37. Petitioner has not shown that a challenge to the search warrant was meritorious or would have been successful. "Only those motions having a solid foundation, not every possible motion, should be filed". United States v. Snyder, 787 F.2d 1429, 1433 (10th Cir.) cert. denied, 479 U.S. 836 (1986). Defense counsel's decision not to pursue a Fourth Amendment claim at trial did not constitute ineffective assistance of counsel.

**Fifth Claim for Relief**

38. Petitioner also asserts that his trial counsel was ineffective for failing to interview witnesses, prepare for trial, obtain discovery, and call various expert witnesses at trial including an eyewitness identification expert, a financial expert, and a tool mark expert.

39. The state's response to Petitioner's state *habeas* petition was adopted by the state trial court as the basis for its denial of that petition. The state noted in its response that Petitioner's trial attorneys filed eighty-one written motions or responses to motions before trial, called twenty-one witnesses in their case-in-chief and three in sur-rebuttal, and submitted sixty-one exhibits. In addition, they submitted two witness lists which contained the names of four hundred and ten and one hundred and forty-five witnesses respectively.

40. Mr. Griffin alleges that prior to trial Petitioner's counsel interviewed only three of the state's witnesses and was consequently unprepared for the substance of their testimony. He also contends that pre-trial discovery was not pursued in an effective manner. Although there is no record

of all the specific preparation done for the trial, the record shows that defense counsel employed at least two investigators for some time before trial.   Many written motions were filed on Petitioner's behalf including a 14 page discovery motion (R.P. at 211), and a 28 page motion to dismiss the death penalty. (R.P. at 183)

41.  Petitioner specifically claims that counsel was ineffective because he failed to call two eye witnesses who saw someone other than him drive a getaway car from the scene of one of the bank robberies for which he was convicted.   Chris Howell and Brendan Doherty told the police that they had seen Chris Kinberger driving a car that might have been the one used in the robbery.

42.  The defense put both men on their witness list. ( R.P. at 550-51). Investigation revealed that Chris Kinberger drove a nearly identical car to the one used in the robbery which belonged to his father, Gus Kinberger. Before trial, both men said that they had been wrong about the car. ( R.P. 987).

43.  The defense was not ineffective for failing to call these witnesses because they would not have been helpful to the defense.  Defense counsel vigorously cross-examined FBI agent Julian Gonzales concerning Chris Kinberger and suggested that the authorities had not adequately investigated this information without opening the door to testimony by Gus Kinberger.

44.  Petitioner also claims that trial counsel should have discovered S.A.Whitehurst of the F.B.I. Laboratory who had testified in other cases that lab director E. Michael Kahoe, who testified against Mr. Griffin, put pressure on other agents at the laboratory to alter results.   The F.B.I laboratory was generally unsuccessful at matching direct evidence to Petitioner in this case.  It therefore would have been contrary to Mr. Griffin's interests for defense counsel to call a witness to undermine the reliability of the F.B.I. laboratory results and counsel was not ineffective for making

14

the decision not to call Mr. Whitehurst for that purpose.

45.  Petitioner also argues that his attorneys' failure to call various experts constitutes ineffective assistance of counsel. He claims that he did not receive the assistance of expert witnesses that would have testified favorably for the defense with regard to Petitioner's financial status, the unreliability of voice identification, alternative sources (other than two cars associated with one of the robberies and the homicide) for the chemical compound polyethylene terephthalate which was found on two drill bits at Petitioner's residence, shoe print analysis, photographic enhancement and spectrographic analysis.

46.  Petitioner's argument regarding the calling of expert witnesses to testify at trial is a challenge to his counsels' tactical decisions. Federal *habeas* courts give substantial deference to attorney's tactical decisions. Osborne v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988); See United States v. Ortiz-Oliveras, 717 F.2d 13, 17 (1st Cir. 1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance of counsel"). Petitioner has not met the Strickland standard with respect to this claim. The Court has reviewed the extensive record in this case and finds that Petitioner's attorneys were well prepared for trial. Failure to call the litany of experts that Petitioner claims should have testified in his case did not prevent counsel from expertly arguing on defendant's behalf.

47.  Petitioner requests that this Court now provide expert witnesses to assist him in attacking the evidence presented at trial. Petitioner contends that the testimony of these experts will show that the state's evidence could have been effectively attacked and that his trial counsel was ineffective for failing to make those attacks.

48.  The Court is not persuaded that, absent defense counsel's failure to call the experts

15

Petitioner claims should have been called, there is a reasonable probability that the jury would have had reasonable doubt to convict. Twenty-two eyewitnesses testified that they were present at the five robberies. The bank robberies were conducted using the same *modus operandi* and cars owned or stolen by Petitioner were seen driving from the scene of the crime. Guns owned or misappropriated by Petitioner were linked to the robberies and to the murder. Various components of some of those firearms were interchanged in an apparent effort to disguise the use of one of the pistols in a murder.

49. Petitioner is essentially requesting that the Court allow him to re-try his case and then make a finding that the evidence he adduces ten years later would have overcome the substantial evidence presented by the state. That is not the function of a federal *habeas* Court and Mr. Griffin's motion for payment of expert witnesses in this case will be denied.

50. A review of the entire record in this case reveals that both Mr. Blackburn and Mr. Mitchell expertly represented Petitioner. The performance of trial counsel did not fall below the objective standard of reasonableness associated with competent representation.

**Sixth Claim for Relief**

51. Petitioner argues that his appellate counsel was ineffective for raising but failing to pursue the claim of ineffective assistance of trial counsel on direct appeal. The New Mexico Supreme Court dismissed the claim because it was not supported by argument. (Answer, Ex. H). However, as discussed *supra*, Petitioner could not have succeeded on his claim of ineffective assistance of trial counsel. Apart from that fact, appellate counsel's failure did not prejudice Petitioner because Petitioner was able to argue ineffective assistance of trial counsel in his state *habeas* petition and to obtain judicial review of those claims. Mr. Griffin is not entitled to relief on the basis of his appellate counsel's failure to argue that issue.

16

## PROSECUTORIAL MISCONDUCT

52.  Petitioner's second claim for relief asserts that the prosecutor knowingly used perjured testimony and misleading evidence to obtain his conviction, thus denying him due process. Petitioner's primary argument in support of this contention involves a set of keys allegedly found in Mr. Griffin's residence that fit a stolen gray Camero used in three robberies. Petitioner argued at trial that the state had failed to show a proper chain of custody for the keys. After a hearing outside of the presence of the jury, the evidence was admitted.

53.  Detective Larry Bullard testified at the offer of proof and then again in front of the jury that he had wrapped the toolbox in duct tape at the scene. Petitioner contends that video footage taken by the news media on July 10, 1989 demonstrates that Detective Bullard testified falsely because it does not show that Detective Bullard was near the toolbox or that it was secured with duct tape. Mr. Griffin claims that because prosecutors were present at the scene, they must have knowingly put forth perjured testimony which contributed to Petitioner's conviction in violation of the due process clause of the 14th Amendment.

54.  Prosecutorial misconduct does not warrant federal *habeas* relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair. Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir.1999) The prosecutorial misconduct must so infect the trial with unfairness as to make the resulting conviction a denial of due process. Hoxsie v. Kerby, 108 F. 3d 1239, 1243 (10th Cir. 1997).

55.  Knowing use of perjured testimony by the prosecution violates a defendant's due process rights. United States v. Wolny, 133 F. 3d 758, 762 (10th Cir. 1998). If the alleged prosecutorial misconduct denied Petitioner a specific constitutional right, a *habeas* claim may be established

17

without requiring proof the entire trial was rendered fundamentally unfair. Walker v. Gibson, 228

F.3d 1217, 1241 (10th Cir. 2000) (citing Paxton v. Ward, 199 F.3d 1197, 1217 (10th Cir.1999)).

However, the petitioner has a high burden in showing that the prosecution knew that the testimony

was false, and the question of whether a witness testified truthfully is generally a credibility issue

within the province of the jury. Bankert v. Shanks, 149 F. 3d 1190 (10th Cir. 1998), cert. denied,

525 U. S. 950, 119 S. Ct. 378 ( 1998).

      56. The keys were not discovered until some time after the tool box had been stored in the

police evidence room. Petitioner contends that the videotape proves that the witness lied about the

chain of custody regarding the toolbox. He claims that the keys must therefore have been "planted"

in the toolbox.

      57. Petitioner raised these claims in his state *habeas* petition, making identical allegations.

Although the state trial court did not hold an evidentiary hearing on that petition, it ordered briefing

by the parties and heard oral arguments on the briefs before denying Petitioner's claims. Because

Petitioner's claims were decided on the merits in state court, he must overcome the deference

accorded to that decision pursuant to 28 U.S.C. 2254(d). It is Petitioner's burden to show that the

decision of the state court was based upon an unreasonable determination of the facts as presented

at trial and he has not met that burden.

      58. Even if the Court does not apply the AEDPA deference standard to this claim, it does

not have merit. Accepting for the purpose of this analysis that the video footage taken by the news

media on the day of the search shows the toolbox without duct tape at the time Detective Bullard

testified he had applied duct tape to secure the contents, the Court cannot conclude from that fact

alone that the keys from the stolen car were planted in the toolbox.

59. The trial court found that the state had presented a chain of custody and ruled that it was a question of fact for the jury to decide whether the car keys were in the toolbox at the time the search was executed, XXXII 66-68. The New Mexico Supreme Court ruled on direct appeal that the trial court did not abuse its discretion in admitting the evidence and that Griffin had the opportunity to cast doubt on the credibility of the evidence at trial. State v. Griffin, 116 N.M. 689, 697, 866 P.2d 1156, 1164 (1993). There is no basis for federal habeas relief on this issue.

60. Petitioner also contends that the prosecution suppressed photos from some of the bank robberies, photos showing that a jacket found in his vehicle was, contrary to testimony by police officers, not reversed, and records showing that he was not in the vicinity of a convenience store where a witness recognized him as a bank robber from the day before. In addition, Petitioner asserts that testimony by an FBI witness regarding the unique style and modus operandi of the bank robberies was misleading.

61. Brady v. Maryland, 373 U.S. 83, 867 (1963), established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." United States v. Young, 45 F.3d 1405, 1407 (10th Cir.), cert. denied, 515 U.S. 1169 (1995). Impeachment evidence as well as exculpatory evidence falls within the Brady rule. Giglio v. United States, 405 U.S. 150, 154 (1972). However, evidence is "material" and falls within the purview of Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial. Kyles v. Whitley, 514 U.S.

19

419, 433-34 (1995).

62. Petitioner's claim fails because the evidence which he claims was suppressed does not undermine confidence in the outcome of the trial even if it is proven to be true. Petitioner was linked to the crimes by witnesses who saw cars which matched his car or cars which were stolen and linked to him leaving the scene of the crime. He was also identified by two tellers from one of the banks which he robbed. In addition, guns and holsters of the same type to those used in the bank robberies were found in Petitioner's possession. Further, Petitioner was found in possession of parts of a gun stolen from the Albuquerque Police Department evidence room. As noted previously, those components were switched with other components from one of Petitioner's pistols. Nevertheless, cartridge casings at the murder scene bore marks indicating that they were fired from Plaintiff's pistol. Overall, there is not a reasonable probability that the trial would have had a different result if Petitioner would have been able to present the evidence he claims has been suppressed.

## JURY INSTRUCTIONS

63. Petitioner's seventh claim for relief is that he was denied due process because the jury instructions given improperly shifted the burden of proof to the defense and presumed the element of intent. This claim attacks the instruction given for First Degree Felony Murder at Petitioner's trial.

64. It is settled law that "[i]n a *habeas* proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.) cert. denied, 514 U.S.1115 (1995) (citing Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir. 1993) cert. denied, 510 U.S. 1120 (1994)). A federal *habeas* court may only set aside a state conviction on the ground of an erroneous jury instruction "when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." Maes, 46 F.3d at 984; see also

Cupp v. Naughten, 414 U.S. 141, 146 (1973). The Supreme Court has explained that "[t]he burden

of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

attack on the constitutional validity of a state court's judgment is even greater than the showing

required to establish  plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

It is not even sufficient to show that " 'the instruction is undesirable, erroneous, or even universally

condemned.' " Id. (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).

65.  Petitioner's claim regarding the lack of an instruction setting forth the element of intent

necessary to his felony murder conviction was reviewed and denied by the New Mexico Supreme

Court. (Answer, Ex. H) That Court found that sufficient proof was presented at trial to satisfy the

requirement of a finding of intent. Id. at 8. It also noted that the jury found that Petitioner shot his

victim four times in the neck and chest at close range when he was interrupted while trying to steal

a vehicle. Id. That finding by the jury suffices to show that Petitioner necessarily acted in a manner

creating a strong probability of death or great bodily harm to another person. Such a showing is all

that would have been required had the jury been instructed regarding the intent necessary to prove

felony murder. Consequently, the erroneous instruction was harmless and Petitioner is not entitled

to relief on this ground. California v. Roy, 519 U.S. 2, 5 (1996)(per curiam) (Error in jury instruction

defining the crime subject to harmless error analysis).

## DOUBLE JEOPARDY

66. Petitioner asserts that his convictions for felony murder and aggravated burglary violate

his right to be free from double jeopardy. Petitioner has never presented this claim to the state courts.

On direct appeal, he argued that he was subject to double jeopardy due to the enhancement of his

sentences for use of a firearm. (Answer, Ex. C, H). Further, Petitioner did not raise a double jeopardy

21

claim in his state *habeas* petition. (Answer, Ex. I). New Mexico does not permit the assertion of claims via collateral proceedings which could have been, but were not, raised on direct appeal. Jackson v. Shanks, 143 F.3d 1313, 1318 (10th Cir. 1998); Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. ) cert. denied, 115 S.Ct. 1972 (1995). Moreover, Petitioner could not now raise the claim in a second state *habeas* petition. See Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999); Cisneros v. State of New Mexico, 88 N.M. 368, 369, 540 P.2d 848, 849 (N.M.Ct.App. 1975). Consequently, Petitioner has procedurally defaulted this claim.

67. Absent Petitioner's default of this issue, he still would not prevail on the merits of his claim. The Fifth Amendment's proscription against double jeopardy protects against multiple punishments for the same offense. Mansfield v. Champion, 992 F.2d 1098, 1100 (10th Cir. 1993). Where the same act violates two different statutes, the relevant inquiry is whether proof of violation of each statute requires proof of an additional fact which the other does not. Id. (citing Blockberger v. United States, 284 U.S. 299, 304 (1932)). In other words, a single incident may be punished under more than one statutory provision if conviction under each provision requires proof of a fact not required under the other statutory provision. Yparrea v. Dorsey, 64 F.3d 577, 579 (10th Cir. 1995)(citations omitted); Timberlake v. United States, 767 F.2d 1479, 1481 (10th Cir.) cert. denied, 474 U.S. 1101 (1986). This aspect of double jeopardy focuses on the elements of the crimes, and not on the specific acts charged or the evidence presented at trial. Timberlake, 767 F.2d at 1481.

68. NMSA 1978 §30-16-4 provides in relevant part that "[a]ggravated burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person either: A. is armed with a deadly weapon; B. after entering, arms himself with a deadly weapon; C. commits a battery upon

any person while in such place, or in entering or leaving such place." The state murder statute, NMSA 1978 §30-2-1(A) provides in relevant part that "murder in the first degree is the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused: (1) by any kind of willful, deliberate and premeditated killing; (2) in the commission of or attempt to commit any felony; or (3) by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life."

69.   In this case, Petitioner was convicted of aggravated burglary for breaking into a vehicle while armed with a pistol. The vehicle had a hole drilled to a window support and damage to the steering column. Noise from the vehicle's alarm alerted Michael Howard, who investigated the noise. Petitioner shot Howard four times then fled the scene. The crime of aggravated burglary was completed by Petitioner's acts of breaking into the vehicle to steal it while armed with a pistol. The separate elements of felony murder were satisfied by his killing of Howard in the commission of that felony. The separate elements of the crimes preclude a finding of double jeopardy. New Mexico v. Livernois, 123 N.M. 128, 134, 934 P.2d 1057, 1063 (1997) (Analyzing New Mexico felony murder and armed robbery statutes and finding no double jeopardy in conviction for both crimes).

## SUFFICIENCY OF THE EVIDENCE

70. The ninth claim asserted by Petitioner is that insufficient evidence was presented at trial to support his convictions. Respondent argues that this claim has been procedurally defaulted. Petitioner raised the sufficiency of the evidence presented at trial on direct appeal, however, he now contends that the New Mexico Supreme Court's determination of that issue relied upon an inaccurate recital of the facts. That particular claim has never been presented to the New Mexico courts. As a matter of logic, such a claim would have to be presented by means of a *habeas* petition, as Petitioner

could not have been aware of the alleged mistake by the New Mexico Supreme Court until the termination of his direct appeal.   Petitioner, however, did not raise the issue in his state *habeas* petition. (Answer, Ex. I).

71. Petitioner cannot now raise the issue in a second *habeas* petition before the New Mexico courts. State v. Gillihan, 86 N.M.439, 440. 524 P.2d 1335, 1336 (1974). The procedural default doctrine bars the review of claims not previously raised in state courts. Keeney v. Tamayo-Reyes, 504 U. S. 1, 112 S. Ct. 1715 (1992). The exceptions to the procedural default rule include: (1) a state's waiver of reliance on default; (2) petitioner's demonstration that waiver is excusable because there is "cause for" and "prejudice from" the failure to present evidence in state court; and, (3) petitioner's demonstration of "fundamental miscarriage of justice" because of a probability of actual innocence. Id; see also Maes v. Thomas, 46 F. 3d 979 (10th Cir. 1995).

72. There is no showing that the state waived reliance on default. To the contrary, the state specifically raised the procedural default issue.  Additionally, Petitioner failed to present any evidence, and the Court cannot find that his failure to pursue available relief in the state court was excusable. There is no showing of excusable cause or prejudice. Finally, Mr. Griffin fails to demonstrate any fundamental miscarriage of justice. Consequently, Petitioner's claim regarding the New Mexico Supreme Court's disposition of his sufficiency of the evidence claim should be dismissed as procedurally barred.

## RECOMMENDED DISPOSITION

The United States Magistrate Judge recommends that Mr. Griffin's §2254 Petition for the Writ of Habeas Corpus, filed December 8, 1997, [Doc. No. 1] be DENIED.   It is further recommended that Petitioner's Motion for an Evidentiary Hearing, filed June 14, 2004 [Doc. No. 98]

and Renewed Motion for Order for Funds for Expert Witnesses, filed June 16, 2004 [Doc. No. 99]

be DENIED.    Finally, it is recommended that Respondent's Motion to Dismiss, filed March 3, 1998

[Doc. No. 16] be GRANTED and that this case be DISMISSED WITH PREJUDICE.

Within ten days after a party is served with a copy of these proposed findings and

recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such

proposed findings and recommendations with the Clerk of the United States District Court, 333

Lomas Blvd. NW, Albuquerque, NM 87102.    A party must file any objections  within the ten day

period allowed if that party wants to have appellate review of the proposed findings and

recommendations.    If no objections are filed, no appellate review will be allowed.

Robert H. Scott    8-25-04
**ROBERT HAYES SCOTT**
**UNITED STATES MAGISTRATE  JUDGE**